## S. A. INGRAM ET AL. V. W. G. TURNER ET AL.

Decided January 26, 1910.

**1.—Nuisance—Abatement—Material Injury.**

In order for an individual to obtain equitable relief for abatement of a public nuisance, such as an encroachment upon the sidewalk by a building of a proprietor of lots adjoining his own, he must show a substantial and special injury to him thereby, different from that to the public generally.

**2.—Same—Finding by Jury—Case Stated.**

The proprietor of a city lot and business house sued the city and an adjoining proprietor for the abatement of a nuisance created by the latter, with acquiescence of the city, in erecting a show window in front of his establishment, encroaching fifteen inches upon the sidewalk and alleged to interfere with travel thereon and with the view into and from plaintiff's establishment. Held that, in the absence of a statement of facts, a finding of the jury that the structure complained of did not materially depreciate the market or rental value of plaintiff's premises was conclusive upon the appellate court, and was ground for denying the relief sought, though some interference, of the character alleged, necessarily resulted from such structure.

Appeal from the District Court of Tarrant County. Tried below before Hon. W. T. Simmons.

*John W. Wray*, for appellant.—Appellants had a vested right in the legal and dedicated use of the street, which could not be appropriated by Turner nor granted away by the city by ordinance or otherwise. First Natl. Bank v. Tyson, 39 So., 560; Freud v. Forbes, 102 N. W., 740; McMillan v. Klaw, 95 N. Y. Supp., 365; Costello v. State, 35 L. R. A., 305; Callahan v. Gilman, with Judge Freeman's note, 1 Am. St., 840; Reimer's Appeal, 100 Pa. St., 182; Hyde v. County, 2 Gray, 267; People v. Harris, 67 N. E., 788·; Field v. Barling, 37 N. E., 853; Kalteyer v. Sullivan, 18 Texas Civ. App., 488; Heard v. Connor, 84 S. W., 605; Corsicana v. Zorn, 97 Texas, 317; Davis v. Austin, 22 Texas Civ. App., 460; Street v. Leete, 65 Atl., 373; Elliott on Roads and Streets (2d ed.), sec. 645 et seq., also 695, also 703. The whole question tersely and clearly stated, 27 Am. & Eng. Ency. (2d ed.), p. 158.

It was the duty of the court on his own findings to have rendered a judgment for the appellants, requiring Turner to remove the obstructions. Costello v. State, 35 L. R. A., 305; First Natl. Bank v. Tyson, 39 So., 560; Freud v. Firbes, 102 N. W., 740; Kalteyer v. Sullivan, 18 Texas Civ. App., 488.

*Capps, Cantey, Hanger & Short*, for appellee.—A municipal corporation by authority delegated to it from a Legislature either by special charter or a general law has the power to permit merchants within its limits by a general ordinance that is reasonable in character and general in application, to use a portion of the sidewalk for the display of goods. Articles 419 and 426, Revised Statutes of Texas; Elliott on Roads & Streets, secs. 653, 424, 425, 450, and authorities cited; Dillon on Municipal Corporations (3d ed.), secs. 658, 680, 683, 688, and authorities cited; 27 Am. & Eng. Enc. (2d ed.), 158, sec. 5, and authorities cited; Livingston v. Wolf, 136 Pa. St., 519, 20 Am. St., 936; Wormser v. Brown, 149 N. Y., 163, 43 N. E., 524; Hawkins v. Sanders, 45 Mich., 491, 8 N. W., 98; Hoey v. Gilroy, 129 N. Y., 132; Cushing v. Boston, 128 Mass., 330, 35 Am. Rep., 383.

In order for an individual to maintain a suit to abate a public nuisance both as against the party maintaining the alleged nuisance and the municipality which permits it, it must be alleged and proved that such individual suffers a special distinct and peculiar injury,

different in kind from that suffered by the general public. Elliott on Roads and Streets, secs. 664, 665, 690, and authorities cited; Wood on Nuisance, sec. 655, and authorities cited; Joyce on Nuisance, sec. 218, and authorities cited; High on Injunctions, secs. 522, 523, 533, and authorities cited; Dillon on Municipal Corporations (3d ed.), sec. 661, and authorities cited; City of San Antonio v Strumberg, 70 Texas, 366; Hulse v. Powell, 21 Texas Civ. App., 471.

The injury must be serious and material. High on Injunctions, sec. 552; Hinchman v. Paterson, 86 Am. Dec., 253.

KEY, ASSOCIATE JUSTICE.—S. A. Ingram, joined by her husband, brought this suit against W. G. Turner and the city of Fort Worth for the purpose of abating an alleged nuisance. The alleged nuisance is a structure which the defendant has erected on the front of his business house, and what is commonly called a show window. The plaintiffs own an adjoining house and lot, and they alleged in their petition that the structure referred to interferes with the travel on the sidewalk and with the view to and from the plaintiffs' property, and with egress and ingress thereto and renders the same less attractive and greatly impairs its market and rental value. The plaintiffs alleged that they had made demand upon the city of Ft. Worth to abate the alleged nuisance, which it had refused to do, and had undertaken to legalize the same by agreeing to accept from Turner a stipulated annual rent for the use of so much of the street as was occupied by the structure complained of.

The city answered by a demurrer and a general denial. Turner's answer included special exceptions, a general denial, and pleas of limitation.

By agreement of the parties the trial judge made findings upon all the issues, except those submitted to the jury, and his findings are as follows:

"1. That S. A. Ingram is the owner in her own estate of lots 8, 9, 10, 23, 24 and 25 in Block C-1, Daggett's addition to the city of Fort Worth, Tarrant County, Texas, having acquired the title thereto May 31, 1899; said property fronts on Main Street seventy-five feet, running back to Rusk Street 200 feet, on which there is erected a three-story brick and iron business building; that immediately on the south of it defendant Turner owns 75 x 200 feet, on which was constructed, more than fifteen years ago, and is still standing, a brick and iron business building; both houses front west on Main Street.

"2. That Main Street is the principal business street of the city of Fort Worth; that more than 10,000 people live south of this property, and their chief means of communication with the city is Main Street; that the depot of the Texas & Pacific Railway Company is within 300 feet of the property, fronts west on Main Street, and out of this is operated more than fifty passenger trains daily; that the travel to and from the depot is along Main Street; that Main Street was dedicated to the use of the city as a street and public highway by E. M. Daggett, more than thirty years ago, and has been

steadily used ever since said time as such; it has been paved twice with different materials, now permanently with vitrified brick; that the sidewalk in front of the property is twelve feet wide; originally the sidewalk was ten feet wide, but by city ordinance regularly passed the width was permanently established at twelve feet.

"3. In September, 1905, defendant erected or rebuilt a structure or show window attached to the west end of his building out into the sidewalk from the property line fifteen inches by seventy-five feet, which rests on the sidewalk and is fourteen feet high; there is a doorway in the center of about five or six feet in width; that this structure is called a bay window sometimes, a show window sometimes, but was erected for the purpose, and is so used, of displaying the merchandise of the tenants occupying this building and advertising their business as the one built in 1899 had been used; that the one so built in 1899 occupied the same space as the one built in September, 1905; the first was continuously used as a show window until the rebuilding of the new one; the new one cost in connection with the awning, about $4,500; it is composed chiefly of plate glass with the points of connection of said glass made of strips of ornamental iron, is attractive in appearance, but occupies the sidewalk west of the property line fifteen inches by seventy-five feet along the sidewalk, by fourteen feet in height.

"4. The two buildings are flush with each other and built flush on the property line; that plaintiffs have show windows constructed in their building within eight inches of the property line. Their building was erected in 1900 and 1901 as a place for the conduct of a wholesale and retail business; has been occupied for such purpose since its erection. At the time of the trial and before that time, plaintiffs' tenants occupying their building used and had been using, movable show cases built of glass and which were used to display goods and advertise their business, and which were set on the sidewalk immediately in front of plaintiffs' building, and which occupied sixteen or eighteen inches of the sidewalk in front of plaintiffs' said building and immediately next to the west front thereof. The windows are about sixteen inches to two feet square, about six feet high, are on rollers.

"5. During the time the defendant was erecting his show windows on the sidewalk, plaintiffs' tenants complained and demanded a similar structure for their purposes; that plaintiffs appealed to the mayor and the city council of the city of Fort Worth to require the removal of defendants' improvements; the city council refused to act. Plaintiffs appealed to the city attorney, who refused to do anything, but notified J. C. Ingram, who was representing the plaintiffs, that if he erected a similar improvement he would be prosecuted under a city ordinance (not the one above referred to) then in force, but since repealed. This finding relating to the repeal by the city is found alone against the city.

"6. I find that at the time of the trial of this cause, and for fourteen years theretofore, there was and had been in force an ordinance which had been regularly passed by the city council of the city of Fort Worth, containing the following provisions:

" 'Section ——. Merchants, etc., allowed certain space. It shall hereafter be unlawful for any merchant, trader, broker or other person to occupy for the display of goods or otherwise more than eighteen inches of any sidewalk of any street, which space shall be taken on the inside of such sidewalk; provided, however, that butchers shall be allowed eighteen inches on the outside of the sidewalk.

" 'Section ——. That it shall be unlawful for any person or persons to maintain or allow to be maintained in connection with their premises any sign or other thing not an awning which rests on or upon any street or sidewalk of the city of Fort Worth, or projects from any building in such a manner as to overhang any street or sidewalk of the city of Fort Worth, to an extent exceeding eighteen inches from the property line.'

"A further section of said ordinance provided that any person violating the two foregoing provisions should be guilty of a misdemeanor, and fined in any sum not less than five nor more than one hundred dollars; and further provided, that each and every day shall constitute a separate offense and punishable as such.

"It is the agreement of the counsel for both parties that any reference to the special charters granted by the Legislature of Texas can be had, made or taken from the special Acts of the Legislature of Texas, granting such charters to the city of Fort Worth.

"'7. Plaintiffs instituted their suit February 8, 1906, against the defendant, and on July 30, 1907, by amended pleading, the city of Fort Worth was made a party, defendant having theretofore, after the commission form of government was established, made a demand upon the mayor and commissioners to require the removal of the obstructions so erected by the defendant. They declined to act. Subsequently thereto, defendant proposed to lease this portion of the sidewalk of fifteen inches by seventy-five feet from the city, and pay an annual rental of $75 a year. The city, by resolution of date September 7, 1907, accepted the proposition.

"8. That there is a double line of street railway on Main Street on which cars pass about every five minutes; that the Northern Texas Traction Company operates the line and also operates an interurban line between the city of Fort Worth and the city of Dallas, Texas; that this line is operated over Main Street, and deflects to the east to Dallas on Front Street, which is south of the plaintiffs' property, between it and the Union Depot; that it maintains a station in the building fronting west on Main Street immediately south of defendant's building and between it and the said depot; the system is excellently managed and passenger traffic heavy. There is a fifteen foot alley between Turner's building and the only one south between Turner's and the Texas & Pacific depot."

In response to special issues the jury found that the maintenance of the show window in question by the defendant Turner does not materially exclude air from the plaintiffs' premises, nor materially exclude the view from or to the front thereof, nor materially interfere with ingress to and egress from the plaintiffs' building; and that it does not and will not materially depreciate the market or rental value of plaintiffs' property. The jury also found that the structure com-

plained of was located at the same place and upon the same ground of a former and similar structure which was erected in May, 1899, and was maintained until it was replaced in September, 1905, by the structure complained of.

Upon the foregoing findings of the judge and jury a judgment was rendered for the defendants and the plaintiffs have appealed.

While it is true that an individual citizen, in a proper case, may obtain equitable relief for the abatement of a public nuisance, yet in order to do so he must show a substantial and special injury to him, different from that to the public generally. Therefore, while an obstruction in a public road or street may constitute a public nuisance, for the abatement of which the government may maintain an equitable action, it does not follow that an individual citizen can obtain such relief merely by proof of the existence of such nuisance. He must go further and prove that it causes special and material injury to some property right of his. In this case appellants contend that they met that requirement by proof of the fact that the show window complained of encroaches fifteen inches upon the street, and thereby, on account of its proximity to their property, necessarily interferes with the view to and from the same. The jury found, as a fact, that the obstruction of the view referred to is not material. No statement of facts has been brought up with the record, and therefore we can not know what testimony was submitted to the jury upon that question, other than the physical facts consisting of the locations of the plaintiffs' and the defendants' lots, buildings, show windows, etc. It may be conceded that the show window complained of will, necessarily and to some extent, obstruct the view to and from the front of the plaintiffs' premises; but witnesses, including the plaintiffs themselves, may have testified that such obstruction was slight and immaterial. Besides, the extent of the obstruction of the view from appellants' building depends upon the number and location of doors and windows in that building, and that information is not disclosed by the record, though it may have been by the evidence. If that building has but one front door and it is sixty feet from appellee's building, the show window on the latter will not obstruct near as much view from that door as would be the case if the door was located within ten feet of appellee's building, for it is a matter of common knowledge that the nearer an object is to the eye the more it curtails the range of vision.

In view of these conditions, it is not believed that this court should disregard the finding of the jury to the effect that the obstruction of the view to and from the plaintiffs' premises is not a material obstruction.

This disposes of the contention relied on for a reversal, and renders it unnecessary for us to decide several points urged on behalf of appellees in support of the judgment.

No reversible error has been shown and the judgment is affirmed.

*Affirmed.*

Writ of error refused.